Dear Mr. Babin:
On behalf of the Cajundome Commission ("Commission"), you have requested an Attorney General's opinion regarding the legality of the Commission's proposed plan to extend employee health benefits to its retired employees and pay a portion or all of the monthly premiums. The Commission was created pursuant to an Intergovernmental Agreement ("Agreement") between the University of Southwestern Louisiana[1] and the City of Lafayette, Louisiana, in accordance with the Local Services Law, found at La.R.S. 33:1321 et seq. Pursuant to La.R.S. 33:1332, the Commission was created by joint resolution as an instrument of the parties with full authority to operate the Cajundome. The Cajundome is a multi-purpose academic, civic and community assembly center.
As provided in your letter, the Commission operates on revenues generated by events hosted at the Cajundome, such as concerts and athletic events, and on an annual subsidy paid by the City of Lafayette, which is currently $500,000. You refer us to Section 18 of the Agreement pertaining to the expenditure of public funds by the Commission. Section 18(A) provides, "[i]n the event the Commission operates the Cajundome through its own employees, all expenditure of its funds shall be in accordance with state requirements relative to expenditure of public funds."
You further stated that the Commission operates the Cajundome using its own employees and provides its employees with certain benefits of employment, one of which is health insurance coverage. The Commission pays two-thirds of the monthly health insurance premiums for participating employees. Presently, in order to facilitate *Page 2 
employee retention, the Commission desires to extend the employee health insurance benefit to its retired employees and pay at least two-thirds of the monthly premiums, but perhaps as much as 100% of the premiums.
This office has on numerous occasions been asked whether public funds can be used to pay the insurance premiums of retired employees and concluded that public funds can be used to pay insurance premiums for retirees. In AG Op. No. 88-578-A, this office opined that a public entity may pay health insurance premiums for its retirees because such expenditures fell within the exceptions to the broad prohibition against donating public funds found in La.Const art. VII, sec. 14(A). The constitutional exceptions are found in La.Const. art. VII, sec. 14(B). Section 14(B)(2) authorizes the use of public funds for contributions to pension and insurance programs for public employees. This office has further opined that the term "employee" in La.Const. art. VII, sec. 14(B)( 2) includes a former employee now retired for purposes of using public funds to pay insurance premiums. See Atty. Gen. Op. Nos. 07-0288, 02-0094 and 90-131.
La.R.S. 33:5151, which authorizes a political subdivision to make contracts of insurance to insure its employees provides:
(A) Any municipality or political subdivision of the state may make contracts of insurance with any insurance company legally authorized to do business in this state insuring their employees and officials under policies of group insurance covering hospitalization, and retirement, for such employees and officials, and may agree to match the payments of the employees and officials for the premiums or charges for any such contracts payable out of the funds of such municipality or political subdivision, respectively.
(B) Nothing in this Section or in R.S. 42:851 shall be construed to limit the contribution of a local governmental subdivision toward the payment of premiums for accident and health protection for its employees or their dependents, or both.
This office has interpreted La.R.S. 33:5151 to permit a political subdivision to pay all or a portion of the insurance premiums for its retired employees. See Atty. Gen. Op. Nos. 07-0288, 07-0151, 02-0094, 94-448, 90-131 and 88-578-A.
We caution, however, that although a political subdivision may pay the cost of insurance premiums for its employees, the agreement or contract of insurance must be in place before the payments are authorized, and past payments may not be reimbursed. In Atty. Gen. Op. No. 91-219, we provided that reimbursement of payments prior to the existence of a contract or agreement of insurance would constitute a donation of public funds and therefore be barred by La.Const. art. VII, sec. 14(A). Unless and until there is an agreement or contract to pay these premiums on behalf of the employees, there is no obligation on the part of the political subdivision to make the payment; therefore the *Page 3 
reimbursement would constitute an unconstitutional donation of public funds. This office reached the same conclusion in Atty. Gen. Op. Nos. 09-0004, 02-0094, 95-152 and 94-448 and 91-219.[2]
In closing, the Commission may pay up to 100% of the health insurance premiums for its retired employees; however, the agreement or contract of insurance must be in place before the payments are authorized, and past payments may not be reimbursed.
We hope this information sufficiently addresses your questions. If we can be of further assistance, please do not hesitate to contact us.
With kindest regards,
JAMES D. "BUDDY" CALDWELL Attorney General
By:_______________ DENISE M. BROU Assistant Attorney General
JDC/DMB/lbw
[1] Now the University of Louisiana Lafayette.
[2] In Att. Gen. Op. No. 09-0004, this office recognized that these opinions were written before City of Port Allen v. Louisiana Mun. RiskMgmt. Agency, Inc., 439 So.2d 399 (La. 1983) was replaced by Board ofDirectors of the Industrial Development Board of the City of Gonzales,Louisiana, Inc. v. All Taxpayers, Property Owners, Citizens of the Cityof Gonzales, et al., 2005-2298 (La. 9/6/06), 938 So.2d 11 (the "Cabela's" case), and opined that the outcome remains the same. Although a political subdivision may pay the insurance premiums of public employees per La.R.S. 33:5151, the insurance contract must be in existence before the payments are authorized, and past payments may not be reimbursed as this would violate La.Const. art. VII, Sec. 14(A). In Cabela's, the Louisiana Supreme Court held that La.Const. art. VII, Sec. 14(A) "is violated when public funds or property are gratuitously alienated." Cabela's,938 So.2d at 20.